UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GEORGE G. ALEXANDER, | |
| Plaintiff, | Case No. C22-77-MLP |
| v. | ORDER |
| TD AMERITRADE, | |
| Defendant. | |

## I.     INTRODUCTION

This matter is before the Court on Defendant T.D. Ameritrade's "Motion to Compel Arbitration and Stay Action" ("Defendant's Motion") seeking to have this matter submitted to Financial Industry Regulatory Authority ("FINRA") arbitration and stayed pending the completion of that arbitration. (Def.'s Mot. (dkt. # 5) at 2.) Plaintiff George G. Alexander, proceeding *pro se*, opposed the motion.[1] (Pl.'s Resp. (dkt. # 12).) Neither party requested oral argument. Having considered the parties' submissions, the balance of the record, and the governing law, Defendant's Motion (dkt. # 5) is GRANTED, and this matter is DISMISSED

---

[1] Plaintiff's response did not substantively address the merits of Defendant's motion. (*See* Pl.'s Resp.) Nevertheless, the Court holds *pro se* plaintiffs to less stringent pleading standards than represented plaintiffs and liberally construes a *pro se* complaint in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013).

ORDER - 1

without prejudice, as further explained below.

## II.   BACKGROUND

Plaintiff opened his first individual retirement account ("IRA") with Defendant in December 2006. (Vihstadt Decl. (dkt. # 6) at ¶ 3, Ex. 1.) To open the IRA, Plaintiff executed an IRA Account Application, which contained the following arbitration clause:

> AGREEMENT TO ARBITRATE CONTROVERSIES: 1. Arbitration is final and binding on the parties. 2. The parties are waiving their right to seek remedies in court, including the right to jury trial. 3. Pre-arbitration discovery is generally more limited than and different from court proceedings. 4. The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited. 5. The panel or arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry. I agree that any controversy relating to any of my accounts or any agreement that I have with you will be submitted to arbitration conducted only under the provisions of the Constitution and Rules of the New York Stock Exchange, Inc. or pursuant to the *code of the Arbitration of the National Association of Securities Dealers, Inc.*[2]

(Vihstadt Decl. at ¶ 3, Ex. 1 (emphasis added).)

On December 1, 2017, Plaintiff executed a Checking/Debit Card Application for his IRA. (Vihstadt Decl. at ¶ 4, Ex. 2.) The Checking/Debit Card Application incorporates Defendant's "Client Agreement," which additionally contains an arbitration clause that provides:

> I agree that any controversy between you and your affiliates, any of their respective officers, directors, employees, or agents and me (including any of my officers, directors, employees, or agents) arising out of or relating to this Agreement, our relationship, any Services provided by you, or the use of the Services, and whether arising before or after the date of this Agreement, shall be arbitrated and conducted under the provisions of the *Code of Arbitration of the FINRA*.

(Vihstadt Decl. at ¶ 5, Ex. 3 (emphasis added).)

---

[2] The National Association of Securities Dealers, Inc. was the predecessor organization to FINRA. *See generally Morgan Keegan & Co. v. McPoland*, 829 F.Supp.2d 1031, 1034 (W.D. Wash. 2011) ("FINRA regulates the activities of its members (securities dealers and brokers) through the FINRA Code. This replaces the former NASD (National Association of Securities Dealers) code.").

ORDER - 2

On July 26, 2018, Plaintiff alleges that Defendant took $113,150.60 from his IRA. (Compl. (dkt. # 1) at 2, Ex. A (dkt. # 1-1) at 1.) On March 16, 2020, Plaintiff wrote a letter to Defendant inquiring why the money was taken from his IRA. (Compl. at 2, Ex. B at 2.) On May 4, 2020, Defendant responded that the funds were taken from Plaintiff's IRA because Defendant had received a tax levy request from the IRS. (Compl. at 2, Ex. C at 3.)

Plaintiff alleges that on May 18, 2020, and on August 10, 2020, he requested that Defendant provide a copy of the tax levy but that he has yet to receive proof to this date. (Compl. at 2, Exs. D at 4, E at 5.) Nevertheless, it appears Defendant sent Plaintiff a letter on August 31, 2020, which included the notice of levy it received from the IRS. (Compl., Ex. F at 6-8.) Despite this correspondence, on January 25, 2022, Plaintiff filed the instant action because he did not receive proof of the "actual levy" from Defendant, seeking to have the funds returned to his IRA in addition to compensatory and special damages.[3] (*See* Compl. at 2-4.)

### III.   DISCUSSION

Defendant noted this matter for the Court's consideration on March 25, 2022. (*See* Def.'s Mot.) On March 22, 2022, Defendant filed a notice of Plaintiff's non-opposition due to his failure to file a response brief by March 18, 2022, the deadline based on the fact that Defendant served its motion to Plaintiff by mail. (Dkt. # 11 at 1; *see* Local Civil Rule 7(d)(3)).

On March 24, 2022, Plaintiff's response was filed. (See Pl.'s Resp.) Plaintiff's certificate of service submitted with his response indicates that he served Defendant via first class mail on March 15, 2022. (*See id.* at 3.) However, it appears Plaintiff's filing to the Court was postmarked on March 19, 2022. (*See* Pl.'s Resp. (dkt. # 12-2) at 1.) Nevertheless, based on the

---

[3] Plaintiff previously filed a complaint alleging the same claims against Defendant on September 11, 2020, which was later dismissed without prejudice for failure to perfect service. *See Alexander v. TD Ameritade*, C20-1358-RSL (W.D. Wash.), dkt. # 7.

ORDER - 3

documentation contained in Plaintiff's response and in light of Plaintiff's *pro se* status, the Court will accept Plaintiff's response as timely filed.

Defendant's Motion argues that the Federal Arbitration Act ("FAA") governs the parties' agreements to arbitrate, and, therefore, this matter should be compelled to FINRA arbitration. (Def.'s Mot. at 4-5.) Plaintiff does not contest the validity or enforceability of the parties' agreements or the arbitration provisions contained therein, nor does Plaintiff contest whether such arbitration provisions govern his claims against Defendant. (*See* Pl.'s Resp. at 1-2.) Instead, Plaintiff solely argues that this case does not fit into FINRA regulatory authority because it does not involve securities trading. (*Id.* at 2.) Specifically, Plaintiff argues that this case is "about TD Ameritrade taking from my account without any legal authority to do so." (*Id.*)

### A.  Agreements to Arbitrate

The FAA provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In a motion to compel arbitration, the Court is limited to determining: (1) whether a valid agreement to arbitrate exists, and, if so; (2) whether the agreement encompasses the claim at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomm. Am.*, 845 F.3d 1279, 1283 (9th Cir. 2017) (internal quotation marks and citation omitted).

If an agreement exists, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in

ORDER - 4

original). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985).

FINRA is a securities industry self-regulatory organization registered with the Securities and Exchange Commission. 15 U.S.C. § 78o-3; *see Laver v. Credit Suisse Securities (USA), LLC*, 976 F.3d 841, 844 (9th Cir. 2020). As a condition of registration, FINRA imposes rules regulating the conduct of its broker-dealer members and other participants. 15 U.S.C. §§ 78o-3(b)(6)-(8). "Upon joining FINRA, a member organization agrees to comply with FINRA's rules." *Laver*, 976 F.3d at 844 (quoting *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011)). To that end, a "FINRA member, therefore, . . . is bound to adhere to FINRA's rules and regulations, including its Code and relevant arbitration provisions . . . ." *Id.* (citation and internal quotations omitted).

Under Rule 12200 of the FINRA Code, parties must arbitrate a dispute under the FINRA Code if:

> [A] Arbitration under the Code is either: (1) Required by a written agreement, or (2) Requested by the customer; [B] The dispute is between a customer and a member or associated person of a member; and [C] The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.[4]

*UBS Fin. Servs., Inc.*, 660 F.3d at 649 (quoting FINRA Rule 12200).

Per the agreements submitted in this case, Defendant is a FINRA member and has clearly provided in its submitted agreements that any dispute be arbitrated under the provisions of the

---

[4] FINRA rules are available at: https://www.finra.org/rules-guidance/rulebooks/finra-rules (last accessed April 7, 2022).

ORDER - 5

Code of Arbitration of FINRA. (*See* Vihstadt Decl. at ¶ 3, Ex. 1; *id.*, ¶ 5, Ex. 3.) As such, FINRA arbitration is indeed appropriate in this matter. Furthermore, the clear terms of the agreements Plaintiff assented to when he executed the applications to facilitate his IRA with Defendant included and/or incorporated agreements to arbitrate any disputes with Defendant. (*See* Vihstadt Decl. at ¶ 3, Ex. 1; *id.*, ¶ 5, Ex. 3.) The validity of those agreements to arbitrate are not contested, and Plaintiff's claims relating to a transfer of funds from his IRA are clearly covered by such agreements. (*See id.*) Accordingly, the Court finds that this matter should be submitted to FINRA arbitration.

### B.   Dismissal or Stay Pending Arbitration

Under the FAA and 9 U.S.C. § 3, where an issue referable to arbitration under an arbitration agreement is present, "the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ." However, if the court determines the matter is subject to arbitration, it may either stay the matter pending arbitration or dismiss it outright. 9 U.S.C. § 3; *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) ("notwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration").

Because the Court finds that there is a valid agreement to arbitrate, and that the parties' arbitration agreement covers the dispute at issue, dismissal of this action is appropriate.

### IV.   CONCLUSION

For the foregoing reasons, the Court herby orders:

ORDER - 6

(1) Defendant's Motion (dkt. # 5) is GRANTED, and this case is DISMISSED without prejudice in favor of arbitration; and

(2) The Clerk is directed to send copies of this Order to the parties.

Dated this 7th day of April, 2022.

*[signature]*

MICHELLE L. PETERSON
United States Magistrate Judge